| | | | |
|---|---|---|---|
| TENNESSEE VALLEY AUTHORITY, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:23-CV-424-TAV-DCP |
| | ) | | |
| FIRE STAR ENERGY | ) | | |
| RESOURCES, LLC, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff's motion to dismiss defendant's counterclaim [Doc. 13]. Defendant has responded in opposition [Doc. 19], and plaintiff has replied [Doc. 20]. Accordingly, this matter is ripe for review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons below, plaintiff's motion to dismiss [Doc. 13] is **GRANTED**, and defendant's counterclaim is **DISMISSED**.

### I. Background

In 2021, the parties entered into two separate contracts for the provision of coal [Doc. 1, p. 1]. These agreements, referred to as "Contract 559" and "Contract 585" (collectively, the "Contracts"), obligated defendant to supply a specified quantity of coal upon the request, acceptance, and scheduling of delivery trains by plaintiff [Doc. 1-2, pp. 4–8]. In the complaint, plaintiff alleges that prior to Contract 559's expiration on February 28, 2022, and Contract 585's expiration on December 31, 2022, defendant failed to supply the agreed-upon quantity of coal [Doc. 1, pp. 4–7]. In its counter-complaint, defendant contends that, following failed price negotiations in June 2022 [*see* Doc. 9-1], plaintiff

indefinitely suspended all coal deliveries due to "alleged quality issues" with defendant's coal [Doc. 9, p. 10].

On November 28, 2023, plaintiff commenced this civil action seeking compensatory damages for unfulfilled coal shipments [*see* Doc. 1]. Defendant counterclaimed [Doc. 9, pp. 11–12], seeking compensatory damages for plaintiff's wrongful suspension of the parties' agreements [*Id.* at 11].

Plaintiff now moves to dismiss the counterclaim [Doc. 13] on grounds that Section 18.4 of the Contracts provided that defendant's sole remedy in the case of plaintiff's wrongful suspension was specific performance:

> If TVA suspends or terminates Firestar's right to make further deliveries hereunder or under any other provision of this Contract and such suspension or termination is finally determined in accordance with the Section titled Disputes/Forum Selection, to have been improper, then Firestar's sole remedy for such improper termination or suspension shall be to require TVA to reschedule all Coal Firestar was prevented from delivering due to such termination or suspension, such Coal to be rescheduled for delivery on dates acceptable to both Parties, but in any event not later than Contract expiration. The price to be paid for such rescheduled Coal shall be the price in effect under the provisions of this Contract at the time of delivery.

[Doc. 1-1, p. 19; Doc. 1-2, p. 20]. Plaintiff also argues that defendant's claims are time-barred under Section 18.4, due to the Contracts' expiration [Doc. 14, p. 6]. Defendant argues that the sole remedy clause is both ambiguous and unconscionable [Doc. 19, pp. 4–9].

**II.      Standard of Review**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to

2

relief." "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Specifically, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to [non-movant], accept all well-pled factual allegations as true, and determine whether [non-movant] undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). However, the Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "'A legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of

3

action sufficient." *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citations omitted).

Further, on a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008). Put differently, "[a] Rule 12(b)(6) movant 'has the burden to show that the plaintiff failed to state a claim for relief.'" *Willman v. Att'y Gen. of United States*, 972 F.3d 819, 822 (6th Cir. 2020) (quoting *Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015)). "The movant's burden . . . is a burden of explanation; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim." *Metro. Gov't of Nashville & Davidson Cnty. v. Fed. Emergency Mgmt. Agency*, No. 3:22-CV-540, 2024 WL 1337189, at *3 (M.D. Tenn. Mar. 28, 2024).

### III. Analysis

#### A. Sole Remedy Clause

##### 1. Federal Common Law and Contract Disputes on a Motion to Dismiss

Plaintiff argues that the Court must apply federal common law to this contract dispute because the Tennessee Valley Authority ("TVA") is "a wholly owned executive branch corporate agency and instrumentality of the United States of America" [Doc. 14, p. 10]. Additionally, plaintiff contends that federal common law recognizes the foundational principle that contract interpretation is a question of law [*Id.* at 11]. It is unclear whether defendant disputes the application of federal common law to this case [*see* Doc. 19, p. 4

4

(stating that "TVA contends that federal common law applies…" but citing to case law applying federal common law)].

Regardless, the Court finds that federal common law applies to this dispute. *Gillham v. TVA*, 488 F.App'x 80, 83–84 (6th Cir. 2012) ("Because the contract at issue involves the United States and was entered into pursuant to a federal statute, federal common law applies.") (citing *United States v. Seckinger*, 397 U.S. 203, 209–10 (1970)); *TVA v. Imperial Pro. Coatings*, 599 F. Supp. 436, 437 (E.D. Tenn. 1984) ("[F]ederal law governs the contract rights and obligations of TVA." (citations omitted)). Federal common law adopts the foundational principle that contract interpretation is a question of law. *See Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008) ("[O]rdinarily judges interpret the language of contracts as a matter of law."). Where a contract dispute can be resolved by the plain language of the contract, dismissal of claims as a matter of law on a motion to dismiss is appropriate. *San Antonio Housing Auth. v. United States*, 143 Fed. Cl. 425, 469–70 (Fed. Cl. 2019) ("Contract interpretation is a matter of law and thus may be addressed by the Court in resolving a motion to dismiss.") (quoting *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014)).

### 2. Whether the Disputed Contract Provisions are Ambiguous

Defendant argues that sole remedy clause of the Contracts conflicts with four other provisions thereby creating ambiguity [Doc. 19, p. 4]. Specifically, it points to Sections 22.0, 31.0, 34.0, and 37.0 of the Contracts [*Id.* at 5–6]. Defendant also argues that ambiguous contract terms should be construed against the drafting party at dismissal [*Id.* at 7], invoking the doctrine of *contra proferentum* [*see* Doc. 20, p. 4]. Plaintiff counters

that the sole remedy clause is unambiguous because it harmonizes with the Contracts as a whole [Doc. 20, p. 1]. Additionally, plaintiff invokes the general/specific canon to the extent that the Contracts could be interpreted to contain any potential ambiguities [*Id.* at 3].

Courts generally interpret contracts by their plain meaning, using traditional interpretive canons. "The first and best way to divine the intent of the parties is from the four corners of their contract and from traditional canons of contract interpretation." *Gallo v. Moen Inc.*, 813 F.3d 265, 273 (6th Cir. 2016). One such canon, the general/specific canon, posits that two seemingly conflictual provisions may be harmonized when they address circumstances at different levels of generality. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (applying the general/specific canon to statutory interpretation). "To eliminate the contradiction, the specific provision is construed as an exception to the general one." *Id.*; *accord United States v. Riccardi*, 989 F.3d 476, 482 (6th Cir. 2021) ("The specific governs the general in the interpretation of a legal text.") (citing *RadLax*, 566 U.S. at 645). *See also Mittleman v. Postal Regul. Comm'n*, 757 F.3d 300, 306 (D.C. Cir. 2014) (applying the general/specific canon to harmonize a provision granting judicial review with another provision creating specific exceptions).

After careful review of the Contracts' plain meaning, the Court finds no conflict among defendant's cited provisions. Only one specific condition triggers Section 18.4: "[i]f TVA suspends or terminates Firestar's right to make further deliveries hereunder . . . and such suspension or termination is finally determined in accordance with the Section

6

Case 3:23-cv-00424-TAV-DCP   Document 26   Filed 09/17/24   Page 6 of 12   PageID #: 210

titled Disputes/Forum Selection, to have been improper" [Doc. 1-1, p. 19; Doc. 1-2, p. 20]. So, the sole remedy clause applies only within a subset of potential coal delivery suspensions [*Id.*]. Section 22.0, which governs disputes under the Contracts, requires the parties to first "use their best efforts to resolve disputes informally," including alternative dispute resolution whenever possible [Doc. 1-1, p. 20; Doc. 1-2, p. 22]. In the event of litigation, the parties consent to this Court's venue [*Id.*]. No contradiction or ambiguity arises from the combination of these two provisions; to the contrary, Section 22.0 contextualizes Section 18.4 by expressing the parties' preference for informal dispute resolution [*Id.*].

Defendant similarly fails to show how Section 18.4 conflicts with Section 31.0, which requires that:

> No waiver of any breach of this Contract shall be held to be a waiver of any other breach. Unless a remedy is expressly designated as exclusive, all remedies afforded under the Contract shall be in addition to every other remedy provided herein or by law.

[Doc. 1-1, p. 22; Doc. 1-2, p. 24]. While this provision generally construes all contractual remedies as additional, it straightforwardly acknowledges a provision like Section 18.4 by stating: "[u]nless a remedy is *expressly designated as exclusive*." *Id*. (emphasis added). Section 18.4 expressly designates itself as "Firestar's *sole remedy* . . ." in the event of wrongful delivery suspension [Doc. 1-1, p. 19; Doc. 1-2, p. 20].[1] Section 18.5 bolsters this

---

[1] The Contracts contain a second sole remedy provision in the event of plaintiff's unilateral termination [*see* Doc. 1-1, pp. 23–24; Doc. 1-2 p. 25]. In that circumstance, Section 38.0 provides that defendant's "sole remedy" is a formula-based cash payment by TVA. Although this provision is not in issue, defendant's interpretive theory would presumably render this provision inoperable, contrary to federal common law. *See Diversified Energy, Inc. v. Tennessee Valley Auth.*, 223 F.3d

7

interpretation because it functions similarly to Section 31.0, stating that: "In addition to the specific remedies provided for herein, in the event of a breach, TVA shall have all rights and remedies provided by law or equity." [Doc. 1-1, p. 19; Doc. 1-2, p. 20]. Within the specific context of default, Section 18.5 confers "all rights and remedies provided by law or equity" to plaintiff alone—not to defendant. And, under the *expressio unius* canon, "expressing one item of [an] associated group . . . excludes another left unmentioned." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002) (quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002)). Sections 18.4 and 18.5, therefore, unambiguously trigger Section 31.0's "unless a remedy is expressly designated as exclusive" carveout.

Even if a straightforward reading of these provisions created some ambiguity, the general/specific canon of interpretation would counsel against such a reading. First, defendant argues that the sole remedy clause's requirement that fault determinations be "finally determined in accordance with [Section 22.0]" [Doc. 19, p. 6] sets up "an unconscionable timeline" for suppliers and must therefore create an ambiguous conflict [*Id.* at 6–7]. But Section 22.0 is a general provision that applies to *any* claim "arising out of or related to this contract (whether sounding in contract, tort, or otherwise)" [Doc. 1-1, p. 20; Doc. 1-2, p. 22]. By contrast, Section 18.4 is a specific provision that provides for a sole remedy in situations where "TVA suspends or terminates Firestar's right to make further deliveries" [Doc. 1-1, p. 19; Doc. 1-2, p. 20]. Here, Section 18.4 "is construed as

---

328, 339 (6th Cir. 2000) (*"*Under settled principles of construction, [a] contract must be read as a whole so as to give meaning and effect to all of its provisions.") (quoting *Malone & Hyde, Inc. v. United States*, 568 F.2d 474, 476 (6th Cir. 1978)).

8

an exception" to Section 22.0.  *See RadLAX*, 566 U.S. at 645.

Additionally, the general/specific canon forecloses any potential conflicts between Section 18.4 and the two remaining provisions cited by defendant:

> 34.0 SURVIVAL: Notwithstanding any termination or expiration of this Contract, any obligation by either Party hereto which by its terms has or may have application after the termination or expiration of this Contract and has not been fully performed or observed, shall survive such termination or expiration.
>
> 37.0 SETOFF: The Parties hereby agree that they shall discharge mutual undisputed debts and undisputed payment obligations due and owing to each other under this Contract on the same date in respect of this Contract. All undisputed amounts owed by each Party to the other Party under the Contract shall be netted so that only the net difference between such amounts shall be payable by the Party who owes the greater amount.  Each Party reserves to itself all rights, setoffs, counterclaims, combinations of accounts, liens and other remedies and defenses which such Party has or may be entitled to consistent with this Contract and whether by operation of law or otherwise.

[Doc. 1-1, p. 23; Doc. 1-2, p. 25]. Defendant argues that Section 34.0's survival provision cannot be squared with Section 18.4's time bar on remedies "later than Contract expiration." *Id*. While Section 34.0 makes clear that some number of legal obligations may persist beyond the Contracts' expiration, Section 18.4 simply clarifies that its particular obligations are subject to a stricter timeframe. The same reasoning applies to defendant's citation to Section 37.0, which provides that each party reserves "all rights . . . counterclaims . . . and other remedies and defenses . . ." [Doc. 1-1, p. 23; Doc. 1-2, p. 25]. Like Section 34.0's temporal reservation, Section 37.0 broadly reserves claims but does not conflict with Section 18.4's specific limitations on a subset of possible claims between the parties.

The sole remedy clause is unambiguous and required defendant to reschedule coal

9

deliveries "on dates acceptable to both [p]arties . . . not later than Contract expiration" [Doc. 1-1, p. 19; Doc. 1-2, p. 20]. Because the clause is unambiguous, defendant's invocation of *contra proferentem* [*see* Doc. 19, p. 7] is inappropriate. *West Bay Builders, Inc. v. United States*, 85 Fed. Cl. 1, 30 (Fed. Cl. 2008) (declining to apply *contra proferentem* at federal common law where no latent ambiguity existed in contract). Defendant's counterclaim cannot be maintained under the plain meaning of the Contracts. Therefore, the only remaining basis for its counterclaim is defendant's contention that the Contracts are unconscionable and therefore unenforceable.

### B. Unconscionability

Defendant argues that dismissal of its counterclaim would be patently inequitable [Doc. 19, p. 8]. Defendant states that the Contracts "present a patchwork of provisions drafted in an attempt to provide overly broad, subjective one-sided remedy to TVA in the event of contractually based conflict" [*Id.* at 9]. Defendant suggests that these Contracts are "so one sided as to shock the conscience" [*Id.*].

Plaintiff disagrees that the unconscionability doctrine applies at all to a sophisticated commercial entity like defendant [Doc. 20, p. 4]. Regardless, plaintiff contends that defendant cannot establish procedural unconscionability (or substantive unconscionability) as defendant is a sophisticated entity that regularly engages in supplying a highly regulated commodity to other sophisticated entities, including TVA [*Id.* at 5]. Additionally, plaintiff argues that, considering defendant signed two separate contracts with materially the same terms approximately six months apart, any assertion of overreach and surprise regarding the Contracts' terms is "nonsensical" [*Id.*].

10

At federal common law, "[a]n unconscionable contract is one 'which no man in his senses, not under a delusion, would make, on the one hand, and which no fair and honest man would accept on the other.'" *Educators Ass'n, Inc. v. United States*, 41 Fed. Cl. 811, 817 (Fed. Cl. 1998) (quoting *Hume v. United States*, 21 Ct. Cl. 328, 330 (Fed. Cl. 1886), *aff'd*, 132 U.S. 406 (1889)). To prevail in this defense, a party must prove that "overreaching, unfair bargaining power, or unfair surprise" infected the contract to such an extent that enforcement is unconscionable. *Id.* (first citing *Glopak Corp. v. United States*, 851 F.2d 334, 338 (Fed. Cir. 1988); then citing *Fraass Surgical Mfg. Co. v. United States*, 571 F.2d 34, 40 (Fed. Cl. 1978)).

Here, defendant provides no "factual content that allows the court to draw the reasonable inference" that the bargaining process or the resulting Contracts were unconscionable. *Ashcroft*, 556 U.S. at 678. As a sophisticated business who routinely contracts with government entities, defendant has not demonstrated that its Contracts with plaintiff emerged through "unfair bargaining power, or unfair surprise." *Id*. During the term of the Contracts, defendant negotiated [*see, e.g.*, Doc. 9-1] and amended [*see, e.g.*, Doc. 1-3, Doc. 1-4] its agreements with plaintiff; yet, at no time prior to this litigation did defendant challenge the conscionability of the Contracts. The Court does not find that these commercial agreements between two sophisticated parties "shock the conscience" [Doc. 19, p. 9]. Accordingly, the Court does not find that the Contracts are unconscionable so as to render them unenforceable.

IV. **Conclusion**

For the reasons above, plaintiff's motions to dismiss [Doc. 13] is **GRANTED** and

11

defendant's counterclaim [Doc. 9, pp. 8–12] is **DISMISSED**.

    IT IS SO ORDERED.

                                          s/ Thomas A. Varlan
                                          UNITED STATES DISTRICT JUDGE