UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

TENNESSEE VALLEY AUTHORITY,    )
                              )
            Plaintiff,        )
                              )
v.                            )        No.:   3:23-CV-424-TAV-DCP
                              )
FIRE STAR ENERGY RESOURCES,   )
LLC,                          )
                              )
            Defendant.        )

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is plaintiff's Motion for Summary Judgment [Doc. 37]. Defendant responded in opposition [Doc. 46], and plaintiff replied [Doc. 48]. Accordingly, this matter is ripe for review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons below, plaintiff's Motion for Summary Judgment [Doc. 37] will be **GRANTED in part** and **DENIED in part**.

## I.    Background

This breach of contract dispute arises from the circumstances surrounding defendant's failure to supply coal to plaintiff as contemplated by their written agreements. In 2021, the parties entered into two separate contracts for the provision of coal, copies of which appear to be attached to plaintiff's complaint [*See* Docs. 1, 1-1, 1-2]. These agreements, referred to as "Contract 559" and "Contract 585" (collectively, the "Contracts"), obligated defendant to supply a specified quantity of coal upon the request, acceptance, and scheduling of delivery trains by plaintiff [Doc. 1-2, pp. 4–8].

Specifically, defendant agreed to supply, and plaintiff agreed to purchase, a total of 102,600 tons of coal under Contract 559 and 184,000 tons of coal under Contract 585 [Doc.

1-1, p.5; Doc. 1-2, p. 5].[1]  In terms of shipping logistics, plaintiff reserved trains for coal deliveries using an online scheduling system called ShipCSX [Doc. 32 ¶ 6].  According to Zane H. K. Irby, a Senior Logistics Specialist employed by plaintiff, once the Tennessee Valley Authority ("TVA") entered a train reservation on ShipCSX, defendant was responsible for activating that reservation through the platform [*Id*.].

Initially, both parties appear to have rendered their respective performances under Contracts 559 and 585, including through use of the ShipCSX platform [*See* Doc. 36-2; Doc. 36 ¶¶ 6–8].  For example, in July 2021, plaintiff reserved a delivery train designated by ShipCSX as reservation number W602 pursuant to Contract 559 [Doc. 36-2, p. 3].  This delivery is designated in the software's log as "Completed" with a load date of July 12, 2021, at which time defendant supplied 11,328.88 tons of coal [*Id*.; Doc. 33 ¶ 6].

However, by the expiration of both Contracts, defendant had failed to provide a cumulative 68,181.50 tons under Contract 559 and 104,231.63 tons under Contract 585 [Doc. 33 ¶¶ 7, 12].  While defendant does not appear to dispute its failure to fully perform under the Contracts, it argues that its performance was excused by (i) plaintiff's prior material breach; and/or (ii) force majeure [*See* Doc. 46].  Ultimately, plaintiff purchased 67,477.72 tons of coal at an average price of $72.58 per ton to compensate for the shortfalls in defendant's deliveries under Contract 559, resulting in claimed damages of $578,958.84 [*Id*. ¶ 9].  As for Contract 585, plaintiff purchased 98,454.58 tons of coal at an average

---

[1]  Although Contract 585 originally contemplated only 138,000 tons, subsequent partially executed call options expanded this initial obligation to 184,000 tons [*See* Doc. 9 ¶¶ 46 (defendant admitting to the same)].

price of $197.58 per ton, resulting in claimed damages of $11,303,570.33 [*Id.* ¶ 13].

Plaintiff brings two breach of contract claims, one stemming from Contract 559 (Count I) and one stemming from Contract 585 (Count II) [Doc. 1 ¶¶ 56–65]. In its answer, defendant asserts several defenses[2] to these claims, including prior material breach by plaintiff, force majeure, failure to satisfy conditions precedent on the part of plaintiff, and estoppel [Doc. 9, pp. 7–8].

## II.     Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). Furthermore, all facts and inferences that the Court draws from the record before it must be viewed in the light most favorable to the nonmoving party. *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn.

---

[2] Defendant also asserted a counterclaim against plaintiff in its answer [Doc. 9, pp. 8–12]; however, the Court granted plaintiff's motion to dismiss as to this counterclaim in its prior Memorandum Opinion and Order [Doc. 26].

3

1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.    Analysis

The parties do not appear to dispute that the Contracts were validly formed and enforceable, nor does defendant disagree that it breached both agreements by failing to deliver the quantity of coal contemplated therein [*See* Docs. 38, 46]. Rather, the disputed issues are whether defendant has a valid excuse for its non-performance of both Contracts and, if not, the appropriate calculation of damages.

This Court has already determined that federal common law governs this dispute [*See* Doc. 26, pp. 4–5 (citing *Gillham v. TVA*, 488 F. App'x 80, 83–84 (6th Cir. 2012)

4

("Because the contract at issue involves the United States and was entered into pursuant to a federal statute, federal common law applies.")]. To recover for breach of contract under federal common law, a party must show "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *Oliva v. United States*, 961 F.3d 1359, 1362 (Fed. Cir. 2020) (quoting *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)).

Plaintiff moves for summary judgment on both Counts I and II on grounds that it has established each of the above-cited elements of breach of contract [Doc. 38, p. 12]. It argues at length regarding the amount of damages, including pre- and post-judgment interest, the Court should award based upon its showing of breach [*Id*. at 13–17]. Additionally, it contends that two of defendant's defenses (i.e., failure to satisfy conditions precedent, force majeure) fail as a matter of law [*Id*. at 17–23].

Defendant responds by arguing that summary judgment is inappropriate given that genuine issues of material fact remain as to its defenses [Doc. 46, p. 2]. Specifically, it first contends that plaintiff's use of the term "rejected" in connection with ShipCSX reservations is misleading insofar as some scheduled trains were not loaded due to CSX's non-performance—not defendant's [*Id*. at 4–8]. Second, defendant argues that plaintiff's payment of an invoice 23 days after the due date constitutes a prior material breach on the part of plaintiff [*Id*. at 10–12]. Defendant does not appear to address or otherwise contest plaintiff's claimed amount and calculation of damages [*See generally id*.].

In reply, plaintiff first rebuts defendant's argument related to ShipCSX reservations [Doc. 48, p. 8]. It contends that, under the Contracts, it satisfied its only obligation with respect to transport, which was to schedule and reserve trains [*Id.* at 9]. Next, as to defendant's prior material breach defense, plaintiff argues that late payment by 23 days cannot be deemed material [*Id.* at 10–14]. Finally, plaintiff replies that even if it is deemed to have suspended Contract 585, there is no genuine question of material fact as to whether such suspension was wrongful because it did not act in bad faith [*Id.* at 15–19].

Before addressing these arguments, a point of clarification is in order regarding defendant's defensive theories. In its answer, defendant initially asserts the following defenses, while reserving the right to supplement or amend: (i) failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); (ii) set-off and/or recoupment; (iii) no factual basis for attorney's fees and costs; (iv) prior material breaches of both Contracts; (v) force majeure; (vi) failure to satisfy conditions precedent of both Contracts; (vii) estoppel; (viii) failure to mitigate damages; and (ix) any and all defenses set forth in the Contracts [Doc. 9, pp. 7–8, ¶¶ 1–10]. In its summary judgment brief, defendant states that plaintiff "addresses only two (2) of Fire Star's defenses" [Doc. 46, p. 3], presumably alluding to the above defenses it initially plead; however, defendant only argues a subset of these defenses for purposes of summary judgment. Specifically, it contends that (i) plaintiff failed to satisfy conditions precedent of Contract 559 prior to defendant's own alleged breach [*Id.* at 4–8];[3] and (ii) plaintiff materially breached and/or suspended Contract 585 prior to

---

[3] In its memorandum in support of summary judgment, plaintiff preemptively argues that it satisfied conditions precedent with respect to Contract 585 by reserving 16, 11,500-ton unit train

defendant's own alleged breach [*Id*. at 8–12].  But nowhere does defendant further develop or invoke the other defenses it initially plead, including force majeure[4] and estoppel [*See generally id*.].

Defendant's failure to respond to plaintiff's arguments regarding certain defenses (e.g., force majeure) and its failure to develop other defenses initially plead constitutes a waiver of those defenses for purposes of summary judgment  *See Brown v. VHS of Michigan, Inc*., 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a [party] is deemed to have abandoned a claim when [it] fails to address it in response to a motion for summary judgment"); *see also Edison v. Twp. of Northville*, 752 F. Supp. 3d 808, 828 (E.D. Mich. 2024) (deeming certain summary judgment arguments waived where the non-movant failed to respond).  "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)).

Therefore, the narrow issues before the Court are: (i) whether a genuine dispute of material fact remains as to plaintiff's prior material breach and/or wrongful suspension of

---

shipments between January 1, 2022, and December 31, 2022 [Doc. 38, p. 19].  Defendant, however, does not address this argument or otherwise raise a defense of failure to satisfy conditions precedent with respect to Contract 585 in its response brief [*See generally* Doc. 46].

[4] Plaintiff argues that defendant waived any force majeure defense regarding Contract 585 because it did not follow the procedures contained therein [Doc. 38, p. 19].  Defendant, however, does not address this argument or otherwise raise a defense of force majeure in its response brief [*See generally* Doc. 46].

Contract 585; and (ii) whether a genuine dispute of material fact remains as to plaintiff's failure to satisfy conditions precedent in Contract 559. *See* Fed. R. Civ. P. 56(a). The Court will address each defense in turn.

## A. Prior Material Breach and/or Wrongful Suspension of Contract 585

Defendant invokes a defense of plaintiff's prior material breach of Contract 585 in its response brief [Doc. 46, p. 8]. Specifically, it points to the circumstances surrounding train reservation number W520 as evidence that plaintiff materially breached this agreement [*Id*. at 9]. After plaintiff received this shipment on July 2, 2022, it raised quality concerns with defendant, which ultimately led to the parties invoking Section 14.2 of Contract 585 to resolve the concerns [*Id*.]. In August 2022, plaintiff allegedly conceded that laboratory analysis had resolved the quality concerns in defendant's favor and payment was thereafter scheduled for August 20, 2022 [*Id*. at 9]. However, payment of the underlying invoice for this delivery was originally due on July 18, 2022; so, defendant argues that plaintiff's late payment by 23 days constitutes a material breach of Contract 585 [*Id*.]. Additionally, defendant argues that following plaintiff's late payment of this invoice, in-person meetings held in Knoxville, Tennessee, in September 2022 led Fire Star personnel to believe that Contract 585 was suspended indefinitely [*Id*. at 10–11].

In reply, plaintiff argues that even if its payment for reservation number W520 was late, this delay cannot constitute a material breach of Contract 585 [Doc. 48, p. 12]. In support, it cites the Contract's provision of a 60-day period to resolve disputed quality concerns, which encompassed the timeframe within which it paid defendant [*Id*. at 13]. To the extent that plaintiff delayed payment, it argues that it was acting in good faith to

8

determine whether it would exercise other contractual rights based on the findings of the laboratory analysis of defendant's coal [*Id*. at 14]. Additionally, as for suspension, plaintiff maintains that it did not suspend Contract 585 [*Id*. at 14–15]. However, even if it did, it argues that such suspension was not in bad faith, meaning plaintiff may still recover pursuant to Contract 585 [*Id*. at 16–19 (citing Doc. 1-2 ¶¶ 18.2, 18.3)].

"Prior material breach is a federal common law defense asserted when a party breaches a contract after another party has already breached the same contract." *Laguna Constr. Co., Inc. v. Carter*, 828 F.3d 1364, 1369 (Fed. Cir. 2016). At federal common law, "'[w]hat was required by way of contract performance' is a question of law, and what the 'allegedly breaching party . . . did or did not do' in relation to that required performance is a question of fact." *Aspen Consulting, LLC v. Sec'y of Army*, 25 F.4th 1012, 1016 (Fed. Cir. 2022) (quoting *Gilbert v. Dep't of Just*., 334 F.3d 1065, 1071–72 (Fed. Cir. 2003)) (citing *Mass. Bay Transp. Auth. v. United States*, 129 F.3d 1226, 1231 (Fed. Cir. 1997)). "Whether a party's 'non-compliance with the terms of a contract is material, so as to constitute a breach, is a mixed question of fact and law.'" *Id*. (quoting *Gilbert*, 334 F.3d at 1071). "A breach is material when it relates to a matter of vital importance, or goes to the essence of the contract." *Thomas v. Dep't of Hous. & Urb. Dev*., 124 F.3d 1439, 1442 (Fed. Cir. 1997) (citing 5 Arthur L. Corbin, *Corbin on Contracts* § 1104 (1964)).

Here, defendant cites plaintiff's late payment of invoice number 5160 as evidence that plaintiff materially breached Contract 585 before defendant's subsequent breach. To determine whether this defense should preclude summary judgment in plaintiff's favor, the Court must first determine, as a question of law, "[w]hat was required by way of contract

9

performance" vis-à-vis plaintiff's payment of this invoice. *Gilbert*, 334 F.3d at 1071. Section 10.1 of Contract 585 provides that payments made by Electronic Fund Transfer "will be made not more than Twenty (20) calendar days after: (1) receipt of a proper invoice(s) by TVA . . . but no sooner than the date of (2) receipt and unloading of the Coal at the Destination" [Doc. 1-2, p. 11]. Defendant attaches email correspondence pertaining to payment of this invoice [Doc. 46-8]. In particular, this correspondence indicates that plaintiff affirmatively withheld payment in July based upon quality concerns stemming from the coal transported in train reservation number W520 [*Id.* at 3 (TVA employee indicating that "we need to . . . withhold payment until after we can reach concession with Firestar")]. Ultimately, upon receipt of a third-party analysis apparently resolving the original quality concern in defendant's favor, plaintiff authorized payment of this invoice on or around August 8, 2022 [*Id.* at 1].

Although the basic facts regarding plaintiff's delayed payment of this invoice appear well-established, the question of materiality presents a barrier to summary judgment. The Court must not weigh evidence at this stage, *Anderson*, 477 U.S. at 249, but determining whether a 23-day delay was "of vital importance" would require the Court to do just that. *Thomas*, 124 F.3d at 1442. Additionally, while drawing inferences in favor of the nonmovant, *Matsushita*, 475 U.S. at 587, the Court cannot disregard reports adduced by defendant that some attendees—including Michael Moran, a principal of a nonparty to this action—expressed fundamental doubts about Contract 585 following in-person meetings in Knoxville [*See* Doc. 46-12, p. 3 (Moran stating that "we couldn't start shipping coal until we satisfied Kelly Flanagan, until Fire Star satisfied Kelly Flanagan")].

In sum, the Court finds that a genuine dispute of material fact remains as to the circumstances surrounding both parties' performance of Contract 585 following train reservation number W520 in 2022. *See* Fed. R. Civ. P. 56(a). Therefore, plaintiff's Motion for Summary Judgment [Doc. 37] will be **DENIED in part** with respect to Count I.

### B. Failure to Satisfy Conditions Precedent of Contract 559

Plaintiff argues that it satisfied its contractual obligations with respect to Contract 559 by reserving nine, 11,300-ton unit train shipments between June 21, 2021, and February 28, 2022 [Doc. 38, p. 18]. In support, it submits a table of train reservations scheduled, including a column entitled "Fire Star Activated/Rejected" [*Id*.].

Defendant disputes the accuracy of plaintiff's table, particularly the significance of the words "rejected" and "activated" [Doc. 46, p. 5]. It contends that "any and all trains 'activated' under Contract 559 yet incomplete occurred due to errors, omissions, or fault of TVA and/or its rail transportation contract agent, CSX" [*Id*. at 6]. In support, defendant cites the declaration of CSX's Director of Sales for the Domestic Coal group, Sara Schryer [Doc. 36] and deposition testimony of Fire Star's principal, Tim Jones [Doc. 45].

In reply, plaintiff argues that "activating reservations was undisputably only one part of Fire Star's shipping duties under the Contracts, Fire Star also had the contractual obligation to coordinate with CSX for the sequencing, scheduling, and loading of TVA's unit train reservations" [Doc. 48, p. 9].

"Generally, a party to a contract may assert the nonoccurrence of a contractual condition precedent as a defense to a claim of breach." *Haddon Hous. Assocs., Ltd. P'ship v. United States*, 711 F.3d 1330, 1338 (Fed. Cir. 2013). "When the party asserting the

11

defense prevented or hindered fulfillment of the condition precedent, however, it cannot rely on that failure to avoid its own obligation to perform under the contract." *Id*. (citing Restatement (Second) of Contracts § 245; 13 Richard A. Lord, *Williston on Contracts* § 39:3 (4th ed. 2000)). "A condition precedent is either an act of a party that must be performed or a certain event that must happen before a contractual right accrues or contractual duty arises." *Park Props. Assocs., L.P. v. United States*, 82 Fed. Cl. 162, 169 (Fed. Cl. 2008) (quoting Lord, *supra*, § 38:7).

The Court begins with the contractual text to determine which obligations, if any, are properly described as conditions precedent to defendant's obligation to perform. Contract 559 provides that:

> Regardless of which Party contracts for transportation necessary to transport Coal purchased and sold hereunder to the Destination, unless otherwise agreed, Firestar shall be responsible for making timely arrangements for the scheduling of transportation equipment necessary to comply with the delivery schedule established by TVA.

[Doc. 1-1, p. 6, ¶ 4.2]. Contract 559 does not contain express reference to ShipCSX, or the terminology deployed therein [*See generally id*.]. Ms. Schryer's declaration distinguishes between "activated," meaning "CSX has received TVA's request and that the mine has accepted the TVA reservation," and "scheduled," meaning "the supplier has sequenced the reservation for loading and CSX has assigned equipment (railcars & locomotives) to the reservation so it can be loaded" [Doc. 36, p. 3].

Upon careful review of the parties' arguments and record evidence, the Court finds that defendant's invocation of the defense of an unsatisfied condition precedent fails as a matter of law with respect to Contract 559. Although the text of Contract 559 does not

delineate with precision where plaintiff's scheduling duties ended and defendant's delivery duties began, it states that "Firestar shall be responsible for making timely arrangements for the scheduling of transportation equipment necessary to comply with the delivery schedule established by TVA" [Doc. 1-1, p. 6, ¶ 4.2]. The evidence adduced by plaintiff illustrates several different ShipCSX scenarios in which defendant appears to have acknowledged plaintiff's scheduling of a delivery train without completing delivery [*See* Doc. 36-2, pp. 3–4]. When Timothy M. Jones, a principal of Fire Star, was asked during a deposition whether TVA's obligation is "to go into ShipCSX and make a reservation for Fire Star," he responded with "correct" [Doc. 45 ¶ 2; Doc. 38-1, p. 8].

For example, in September 2021, defendant accepted a train reservation *and* sequenced the reservation with specifically assigned CSX equipment, but ultimately did not complete delivery with respect to reservation number W647 [*See* Doc. 36-2, p. 3]. Based on the language contained in Contract 559 regarding scheduling [*See* Doc. 1-1, p. 6, ¶ 4.0], this unrebutted evidence would not permit a reasonable finder of fact to conclude that plaintiff's actions with respect to reservation number W647 amounted to "the nonoccurrence of a contractual condition precedent." *Haddon Hous.*, 711 F.3d at 1338; *Anderson*, 477 U.S. at 248.

Defendant's argument with respect to plaintiff's alleged mischaracterization of labeling "Fire Star Activated/Rejected" is well-taken as it does appear that plaintiff's table collapses the ShipCSX distinction between "scheduled" and "accepted" into simply "Activated" [*See* Doc. 38, p. 8]. But even bearing this distinction in mind does not save defendant's argument regarding train reservations that were merely "accepted." Consider,

13

for example, reservation numbers W322 and W326 in October and November 2021, respectively [Doc. 36-2, p. 3]. According to Ms. Schryer's declaration, the spreadsheet indicates that in each instance defendant "accepted the TVA reservation" [Doc. 36, p. 3]. This unrebutted evidence, as before, would not permit a reasonable finder of fact to conclude that plaintiff's actions with respect to reservation numbers W322 and W326 amounted to "the nonoccurrence of a contractual condition precedent." *Haddon Hous.*, 711 F.3d at 1338; *Anderson*, 477 U.S. at 248.

And to the extent that defendant argues "errors, omissions, or fault" should be attributed to plaintiff's "rail transportation contract agent, CSX" [Doc. 46, p. 6], such an argument would appear better suited as a third-party impleader claim against CSX—not as evidence that plaintiff failed to trigger a condition precedent to the parties' agreement. *See* Fed. R. Civ. P. 14(a)(1) (providing that a defending party may implead "a nonparty who is or may be liable to it for all or part of the claim against [the defending party]"). In sum, this defense as to Count II fails as a matter of law.

Because the Court has determined that this defense fails, that plaintiff has otherwise demonstrated a valid claim for breach of contract, and that defendant's other defenses relate only to Contract 585, the Court finds that plaintiff is entitled to judgment as a matter of law as to its breach of contract claim arising from Contract 585, Count II. However, given that the Court has not granted "all the relief requested" in plaintiff's summary judgment motion (*see supra* Section III(A)), and pursuant to Federal Rule of Civil Procedure 56(g), the Court will decline to treat the fact of damages awardable from this breach as established in this case. *See* Fed. R. Civ. P. 56(g). In so doing, the Court exercises its discretion to determine

14

"that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event."  Comm. Note on Rules—2010 Amend., Fed. R. Civ. P. 56; *see also Tennessee Valley Auth. v. United States*, 60 Fed. Cl. 665, 676 (Fed. Cl. 2004) (partially granting summary judgment to TVA on issue of contract liability while reserving damages for trial).

Therefore, plaintiff's Motion for Summary Judgment [Doc. 37] will be **GRANTED in part** with respect to Count II.  The defense of plaintiff's failure to satisfy conditions precedent as to Contract 559 fails as a matter of law.

## IV.    Conclusion

For the reasons set forth above, plaintiff's Motion for Summary Judgment [Doc. 37] is **GRANTED in part** and **DENIED in part**.  A genuine dispute of material fact remains as to Count I.  Plaintiff is entitled to judgment as a matter of law as to Count II, but the Court reserves ruling on damages given that issues remain for trial.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE